# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

---

**No. ACM 39927 (f rev)**

---

**UNITED STATES**
*Appellee*

**v.**

**Aiden B. KING**
Airman First Class (E-3), U.S. Air Force, *Appellant*

---

Appeal from the United States Air Force Trial Judiciary

*Upon Further Review*

Decided 11 September 2023

---

*Military Judge*: Bryon T. Gleisner; Charles G. Warren (remand).

*Sentence*: Sentence adjudged on 7 May 2020 by GCM convened at Keesler Air Force Base, Mississippi. Sentence entered by military judge on 29 May 2020 and reentered on 23 December 2021: Bad-conduct discharge, confinement for 12 months, and reduction to E-1.

*For Appellant*: Major Matthew L. Blyth, USAF.

*For Appellee*: Lieutenant Colonel Matthew J. Neil, USAF; Lieutenant Colonel Dayle P. Percle, USAF; Major Joshua M. Austin, USAF; Major Alex B. Coberly, USAF; Major John P. Patera, USAF; Mary Ellen Payne, Esquire.

Before RICHARDSON, CADOTTE, and ANNEXSTAD, *Appellate Military Judges*.

Senior Judge CADOTTE delivered the opinion of the court, in which Senior Judge RICHARDSON and Senior Judge ANNEXSTAD joined.

---

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

---

CADOTTE, Senior Judge:

A general court-martial composed of a military judge sitting alone found Appellant guilty, in accordance with his pleas and pursuant to a pretrial agreement (PTA), of one charge with one specification of attempted sexual abuse of a child in violation of Article 80, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 880.[1] The military judge sentenced Appellant to a bad-conduct discharge, confinement for 13 months, and reduction to the grade of E-1. The convening authority reduced the adjudged term of confinement to 12 months pursuant to the PTA and approved the rest of the sentence.[2]

Appellant's case is before this court for the second time. Appellant initially raised five issues on appeal which we have reworded: (1) whether the military judge erred in admitting a victim impact statement; (2) whether Appellant was subjected to cruel and unusual punishment in violation of the Eighth Amendment[3] and Article 55, UCMJ, 10 U.S.C. § 855; (3) whether Appellant's sentence was inappropriately severe; (4) whether Appellant's registration as a sex offender represented cruel and unusual punishment, or otherwise warranted sentence appropriateness relief; and (5) whether the convening authority "erred by failing to approve the sentence."[4] We agreed with Appellant with respect to his fifth assignment of error, and remanded Appellant's case to the Chief Trial Judge, Air Force Trial Judiciary. *See United States v. King,* No. ACM 39927, 2021 CCA LEXIS 591, at \*5–7 (A.F. Ct. Crim. App. 8 Nov. 2021) (per curiam) (unpub. op.). We deferred addressing the other assignments of error until the record was returned to this court for completion of our review under Article 66(d), UCMJ, 10 U.S.C. § 866(d).

After the case was remanded, the convening authority took new action approving the sentence of a bad-conduct discharge, confinement for 12 months, and reduction to the grade of E-1. Appellant, through counsel, now raises an additional assignment of error: (6) whether the convening authority erred by failing to consider Appellant's supplemental submission of clemency matters.

---

[1] References to the punitive articles of the UCMJ are to the *Manual for Courts-Martial, United States* (2016 ed.). Unless otherwise specified, all other references to the UCMJ and Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.) (2019 *MCM*).

[2] The convening authority agreed within the PTA to not approve confinement in excess of 12 months, to not approve a punitive discharge more severe than a bad-conduct discharge, and to "not pursue any additional charges related to [the] investigation."

[3] U.S. CONST. amend. VIII.

[4] Appellant personally raised issue (4) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

We find the convening authority's latest action and the new entry of judgment remedy the error identified in our earlier opinion. We carefully considered issue (4) and find it does not warrant further discussion or relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987). As to the findings, we find no error materially prejudicial to a substantial right of Appellant and affirm. As to the sentence, we find the convening authority erred by not considering Appellant's supplemental matters prior to taking action and we grant relief. *See United States v. Rosenthal*, 62 M.J. 261, 262–63 (C.A.A.F. 2005) (per curiam). As a result, we modify the sentence to a bad-conduct discharge and confinement for 12 months.

## I. BACKGROUND

On 27 September 2018, an 11-year-old female civilian (MB) broadcasted a live video via a social media application in which MB lifted her shirt exposing her bra. Appellant previewed the video while on the application, but did not view it in its entirety because he intended to watch the entire video later. However, when Appellant attempted to watch the entire video, it had been removed from the application. Unbeknownst to Appellant, the video was removed after local law enforcement were contacted by an Internet watchdog group to report MB's video posting. Civilian law enforcement in turn contacted MB's mother, JS, to alert her to her daughter's video posting. JS began monitoring MB's social media accounts after being contacted by law enforcement.

After discovering the video was removed, Appellant sent a direct message to MB through the same social media application. Appellant then searched for MB on a different social media application. After finding her account, Appellant sent MB a direct message on the second social media application. JS intercepted Appellant's messages and responded posing as MB. Through one of the responses, Appellant learned that MB was about to turn 12 years old. Believing he was communicating with an 11-year-old girl, Appellant requested "naughty photos" or "nudes."

## II. DISCUSSION

### A. Victim Impact Statement

Appellant asserts the military judge erred in admitting a court exhibit from MB, a "nonvictim" who did not request to be heard. We disagree.

#### 1. Additional Background

After the Government's sentencing case, trial counsel informed the military judge that JS would be providing a written unsworn victim statement for consideration. Neither JS or MB were represented by counsel and there was no

Article 6b, UCMJ, 10 U.S.C. § 806b, representative appointed for MB. During the presentencing proceeding the following exchange occurred:

> [Military Judge (MJ)]: Is there a crime victim present who wishes to be heard?
>
> [Trial Counsel (TC)]: Yes, Your Honor. [JS], through government counsel has indicated her desire to submit an unsworn victim impact statement to the court for consideration.
>
> MJ: Okay, so she's not physically present here?
>
> TC: That is correct, Your Honor.
>
> MJ: But there is a written unsworn statement?
>
> TC: Yes, Your Honor.
>
> MJ: And this was submitted by [JS]?
>
> TC: Yes, Your Honor.
>
> MJ: [JS] does not have a special victims counsel, is that correct?
>
> TC: That is correct, Your Honor.
>
> MJ: So essentially, since she doesn't have a representative for exercising her right to submit an unsworn statement, you are just assisting her in exercising that right?
>
> TC: Yes, Your Honor.
>
> MJ: Defense counsel, do you have any objection to that?
>
> [Trial Defense Counsel (DC)]: No, Your Honor.
>
> MJ: Do you have any objection to the unsworn statement?
>
> DC: No, Your Honor.
>
> MJ: With there being no objection from defense counsel, the Court Exhibit 1 would be the victim impact statement of [JS].

JS's statement began by identifying herself as MB's mother. She went on to state, "I became involved in this case when [Appellant] reached out to my daughter," MB, through a social media application. "I was the person conversing with [Appellant] through my then, 11[-]year[-]old daughter[']s account." JS then foreshadowed the content of her statement, explaining how Appellant's "conversations have affected both [her]self and [her] now 13[-]year[-]old daughter."

JS explained that she "lost a lot of sleep," her "anxiety and panic attacks increased tremendously," and she became "irritable" with her family. JS wrote that her "kids wanted [her] attention." However, she was "buried deep" in her

phone because she "was busy researching and learning all that [she] could about different [applications] and social media that make it easy for children to be groomed on."

JS's statement then focused on her daughter:

> As for my daughter [MB], she didn't go on her phone for almost 4 months. One of the months because it was taken away, the other months, fear. She became quiet and stayed in her room [the] majority of the time. She may not have been the one behind the phone talking to [Appellant,] but[ ] she saw how it affected me, which in turn affected her. We have a special bond. Being a single mother you have a different kind of relationship with your children. [MB] is the type of person that feels things deeply. She is an empath[ ]. She felt what I was feeling. I saw it in her eyes during our talks. This wasn't just something you read about other people enduring anymore, it was taking place right in our own family. [MB] stopped going to friends['] houses and became a home body. She wanted to stay close to wherever I was. I'm not sure if she was protecting me or herself at that point.

> For both [MB] and [me], this has been a long time coming. We are both ready to put this behind us and move forward with our lives.

**2. Law**

A crime victim is defined as "an individual who has suffered direct physical, emotional, or pecuniary harm as a result of the commission of an offense of which the accused was found guilty." Rule for Courts-Martial (R.C.M.) 1001(c)(2)(A); *see also* Article 6b, UCMJ. "[V]ictim impact includes any financial, social, psychological, or medical impact on the crime victim directly relating to or arising from the offense of which the accused has been found guilty." R.C.M. 1001(c)(2)(B).

Unsworn victim impact statements must comply with R.C.M. 1001(c)(2)(A) to be presented at sentencing. *See United States v. Hamilton*, 78 M.J. 335, 337 (C.A.A.F. 2019). As victim impact statements are not "evidence" under R.C.M. 1001(c)(2)(a), "the military judge assesses the content of a victim's unsworn statement not for relevance, but for scope." *United States v. Hamilton*, 77 M.J. 579, 586 (A.F. Ct. Crim. App. 2017) (en banc), *aff'd*, 78 M.J. 335 (C.A.A.F. 2019); *see also United States v. Tyler*, 81 M.J. 108, 112 (C.A.A.F. 2021) (holding a victim impact statement was not "evidence" and not subject to the Military Rules of Evidence).

"Congress has granted the victim of an offense under the UCMJ the right to be 'reasonably heard' during any sentencing hearing related to that offense."

*United States v. Edwards*, 82 M.J. 239, 245 (C.A.A.F. 2022) (citing Article 6b(a)(4)(B), UCMJ, 10 U.S.C. § 806b(a)(4)(B)). A victim's right to be heard "is separate and distinct from the [G]overnment's right to offer victim impact statements in aggravation, under R.C.M. 1001(b)(4)." *Id.* (emphasis, internal quotation marks, and citation omitted). If a victim elects to make a statement during the presentencing phase, the victim may confer with trial counsel in preparation for the unsworn statement, "but trial counsel may not misappropriate the victim's right to be heard." *Id.* at 246.

When "determining whether a military judge erroneously admitted an unsworn victim statement," we apply an abuse of discretion standard. *Id.* at 243 (citations omitted). We consider a military judge's interpretation of law de novo. *Id.*

We also consider whether an accused has waived, rather than merely forfeited, an issue as a question of law which we review de novo. *United States v. Ahern*, 76 M.J. 194, 197 (C.A.A.F. 2017) (citing *Rosenthal*, 62 M.J. at 262). "Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." *United States v. Davis*, 79 M.J. 329, 331 (C.A.A.F. 2020) (internal quotation marks and citation omitted). Notwithstanding this substantive rule of law, our superior court has instructed that Courts of Criminal Appeals "are required to assess the entire record to determine whether to leave an accused's waiver intact, or to correct the error." *United States v. Chin*, 75 M.J. 220, 223 (C.A.A.F. 2016) (citation omitted).

### 3. Analysis

When the military judge asked the trial defense counsel whether he had any objection to JS's unsworn statement, trial defense counsel specifically stated he did not object. Trial defense counsel had the opportunity to review the contents of JS's statement prior to responding to the military judge's question that he had no objection to the statement. With this response, trial defense counsel "'did not just fail to object,' but 'affirmatively declined to object' when answering 'no' to the military judge's question." *United States v. Cunningham*, __ M.J. __, No. 23-0027, 2023 CAAF LEXIS 520 (C.A.A.F. 21 Jul. 2023) (quoting *Davis*, 79 M.J. at 331–32). We find Appellant waived any objection to JS's unsworn statement as this was an intentional relinquishment or abandonment of a known right. *Davis*, 79 M.J. at 331. We have also considered the entire record; we have decided to leave Appellant's waiver intact and decline to pierce waiver. C*hin*, 75 M.J. at 223.

## B. Post-Trial Confinement

Appellant claims that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment and Article 55, UCMJ, when he was

denied an opportunity to submit a request for parole. Should we find no such violation, Appellant asks this court to grant relief under its Article 66, UCMJ, authority. We are not persuaded relief is warranted.

### 1. Additional Background

On 7 May 2020, Appellant began his confinement at the Harrison County Adult Detention Center (HCADC) in Gulfport, Mississippi. Appellant remained confined at the HCADC until 23 November 2020, when he was transferred to the Naval Consolidated Brig, Charleston, South Carolina (Brig). The Brig convened a disposition board to evaluate Appellant for parole and clemency on 18 December 2020. During the disposition board Appellant waived his consideration for clemency and parole, choosing instead to wait for his minimum release date in February 2021.

In his declaration to this court, Appellant states that he attempted to "put together a parole plan from inside Harrison County [Adult Detention Center], but received no help from the facility or anyone in the military who deals with parole packages."[5] Appellant explains that he submitted an Article 138, UCMJ, 10 U.S.C. § 938, complaint to his commanding officer, but it was rejected "because the commander stated he lacked the power to provide a remedy." Appellant claims he "did not retain copies of the filed complaint because [he] lacked facilities to make copies, and [his] copy of the response was lost at some point during [his] transfer." When describing his conditions upon arriving at the Brig he states,

> I was kept in quarantine for 2 weeks, plus 1 extra day on suicide watch. During these extra days, I was not able to access a computer since I did not have a login. After my quarantine days were over, I was told that I'd be having a parole board hearing the same week. I was not able to prepare for this hearing since I had no access to what I needed to put together a parole package. At this time, I was told that my sentence abatement would bring my new minimum release date to 26 February 2021. My parole board hearing was on 18 December 2020. During my hearing I had waived my parole and clemency. In addition to not having time to prepare a parole package, I also waived my parole because of the time it would have taken to get sent up to the Parole Board in Washington D.C., my minimum release date would

---

[5] We consider the declaration, to include the attachments, necessary to resolve an issue "raised by the record but [ ] not fully resolvable by the materials in the record," and to determine whether Appellant's Eighth Amendment and Article 55, UCMJ, rights were violated. *United States v. Jessie*, 79 M.J. 437, 442–44 (C.A.A.F. 2020) (citation omitted).

have passed. I would've been waiting to go home on parole when
I could have already been home as a free citizen.

**2. Law**

Claims that the Government violated Article 55, UCMJ, and the Eighth
Amendment are reviewed de novo. *United States v. Wise*, 64 M.J. 468, 473
(C.A.A.F. 2007) (citing *United States v. White*, 54 M.J. 469, 471 (C.A.A.F.
2001)). Both the Eighth Amendment and Article 55, UCMJ, prohibit cruel and
unusual punishment. In general, when a claim is raised pursuant to Article
55, UCMJ, we apply the United States Supreme Court's interpretation of the
Eighth Amendment except where it is apparent that legislative intent provides
greater protections under Article 55, UCMJ. *See United States v. Avila*, 53 M.J.
99, 101 (C.A.A.F. 2000).

"[T]he Eighth Amendment prohibits two types of punishments: (1) those
incompatible with the evolving standards of decency that mark the progress of
a maturing society or (2) those which involve the unnecessary and wanton in-
fliction of pain." *United States v. Lovett*, 63 M.J. 211, 215 (C.A.A.F. 2006) (in-
ternal quotation marks and citations omitted). "The Constitution 'does not
mandate comfortable prisons,' but neither does it permit inhumane ones."
*Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452
U.S. 337, 349 (1981)). A violation of the Eighth Amendment is shown by
demonstrating:

> (1) an objectively, sufficiently serious act or omission resulting
> in the denial of necessities; (2) a culpable state of mind on the
> part of prison officials amounting to deliberate indifference to
> [an appellant]'s health and safety; and (3) that [an appellant]
> "has exhausted the prisoner-grievance system . . . and that he
> has petitioned for relief under Article 138, UCMJ, 10 U.S.C.
> § 938 [2000]."

*Lovett*, 63 M.J. at 215 (omission and third alteration in original) (footnotes
omitted).

Under a deliberate indifference standard, "prison guards and officials must
be consciously aware of the risk or danger to the inmate and choose to ignore
it; they must have been aware of the harm or risk of harm caused [the] appel-
lant, and continued anyway." *United States v. Sanchez*, 53 M.J. 393, 396
(C.A.A.F. 2000).

"There is no constitutional or inherent right of a convicted person to be con-
ditionally released before the expiration of a valid sentence." *Greenholtz v. In-
mates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). "Because the deci-
sion whether to grant parole is a discretionary one, 'a prisoner cannot claim
entitlement and therefore a liberty interest in the parole release.'" *Burnette v.*

*Fahey*, 687 F.3d 171, 181 (4th Cir. 2012) (quoting *Gaston v. Taylor*, 946 F.2d 340, 344 (4th Cir. 1991) (en banc)) (additional citation omitted). Denial of parole does not constitute cruel and unusual punishment. *See Malek v. Haun*, 26 F.3d 1013, 1016 (10th Cir. 1994); *see also Rodman v. Seiter*, 869 F.2d 1492, 1492 (6th Cir. 1989) (order) (denying parole is not cruel and unusual punishment); *Damiano v. Fla Parole & Prob. Com.*, 785 F.2d 929, 933 (11th Cir. 1986) (per curiam) ("[T]he denial or postponement of parole is merely a disappointment rather than a punishment of cruel and unusual proportions." (Citing *Craft v. Texas Board of Pardons and Paroles*, 550 F.2d 1054 (5th Cir. 1977))).

Courts of Criminal Appeals have the authority under Article 66, UCMJ, to grant sentence appropriateness relief for post-trial confinement conditions even when they do not amount to cruel and unusual punishment, but where there is nonetheless a legal deficiency in the post-trial confinement conditions. *United States v. Gay*, 74 M.J. 736, 741–42 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016); *see also United States v. Tardif*, 57 M.J. 219, 223 (C.A.A.F. 2002) (affirming a broad authority of Courts of Criminal Appeals to review and modify sentences pursuant to Article 66, UCMJ).

### 3. Analysis

In order to secure relief for cruel or unusual confinement conditions, Appellant bears the burden to demonstrate all three prongs of the test articulated in *Lovett* are met. 63 M.J. at 215. Appellant has failed to do so. Appellant failed to satisfy the first prong of *Lovett* which required a "sufficiently serious act or omission resulting in the denial of necessities." *Id.* In his brief and declaration, Appellant describes the circumstances impacting his consideration for parole. It is entirely speculative as to whether Appellant would have been granted parole. In fact, contrary to Appellant's claim, he had the opportunity to be considered for parole but chose to waive the opportunity because he desired to be released at his minimum release date rather than paroled. We find that even if prison officials failed to strictly comply with departmental regulations applicable to Appellant's parole consideration, thereby causing a delay, that failure does not constitute cruel and unusual punishment.

Furthermore, Appellant has failed to demonstrate deliberate indifference by the prison officials, as required, because there was no "risk or danger" to Appellant with regard to his potential parole that the prison officials could have consciously chosen "to ignore." *Sanchez*, 53 M.J. at 396. Failure to process parole in accordance with regulations did not create a "harm or risk of harm" to Appellant. *Id.* After Appellant arrived at the Brig, officials made efforts to afford Appellant an opportunity to meet a parole board, which he then waived. We do not find the circumstances such that prison officials were deliberately indifferent to Appellant's health and safety.

Appellant asserts, in the alternative, that confinement conditions and post-confinement treatment warrant relief pursuant to Article 66(d), UCMJ, and *Gay*. "Under Article 66(c), UCMJ, our sentence appropriateness authority is to be based on our review of the 'entire record,' which necessarily includes the appellant's allegation of the conditions of his post-trial confinement" raised in the appellant's clemency submission to the convening authority. *Gay*, 74 M.J. at 742 (citation omitted); *see also United States v. Willman*, 81 M.J. 355, 356–57 (C.A.A.F. 2021) (concluding that the Courts of Criminal Appeals do not have authority to consider outside-the-record evidence submitted in support of an appellant's Eighth Amendment[6] or Article 55, UCMJ, claims when performing sentence appropriateness review under Article 66, UCMJ). We have considered the entire record, to include all matters Appellant submitted to the convening authority under R.C.M. 1106. We determined remand is not necessary for a post-trial factfinding hearing, and find that Appellant's claims do not merit sentencing relief.

## C. Sentence Severity

Appellant argues his sentence is inappropriately severe for three reasons: (1) extended pretrial restraint—584 days of restriction to base—magnified his punishment beyond the adjudged sentence; (2) the post-trial denial of his right to apply for parole rendered his sentence more severe than another confinee with the exact same sentence; and (3) the nature of the offense and Appellant's character should not yield so harsh a sentence. We disagree and find no relief is warranted.

We review sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2016) (footnote omitted). We "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we] find correct in law and fact and determine[ ], on the basis of the entire record, should be approved." Article 66(d), UCMJ. "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (per curiam) (citations omitted). While we have great discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010) (citation omitted).

Appellant contends the 12-month sentence of confinement is excessive. We disagree and do not find Appellant's sentence inappropriately severe considering the offenses and the record before us. The maximum sentence available for

---

[6] U.S. CONST. amend. VIII.

the offense of which Appellant was convicted included a dishonorable discharge, 15 years of confinement, forfeiture of all pay and allowances, reduction to the grade of E-1, and a reprimand. Appellant committed an offense where he requested nude photographs from someone he believed to be an 11-year-old child. We have carefully considered all claims raised by Appellant and find none of his claims warrant relief. We have given full individualized consideration to Appellant and to the appropriateness of his sentence. After careful consideration of the matters contained in the record of trial which were before the military judge, the nature and seriousness of Appellant's offenses, and his record of service, we find the sentence is not inappropriately severe.

## D. Supplemental Submission of Matters

Appellant argues the convening authority erred by failing to consider Appellant's supplemental submission of matters. We agree and grant relief.

### 1. Additional Background

On 7 May 2020, the military judge announced the sentence in Appellant's case. Appellant submitted his initial clemency matters on 17 May 2020, requesting the convening authority "disapprove his reduction in rank." On 26 May 2020, the convening authority signed a Decision on Action memorandum reducing the period of confinement from 13 to 12 months, pursuant to the PTA, but took no action on the remainder of the sentence.

On 8 November 2021, this court remanded Appellant's case to the Chief Trial Judge, Air Force Trial Judiciary, to resolve a substantial issue with the convening authority's decision memorandum in that it failed to take action on the entire sentence, as required by Article 60, UCMJ, 10 U.S.C. § 860 (*Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*)), at the time. *King*, unpub. op. at *5–7. In our decree we authorized a detailed military judge to:

> (1) Return the record of trial to the convening authority or his successor to take action on the sentence;

> (2) Conduct one or more Article 66(f)(3), UCMJ (2019 *MCM*), proceedings using the procedural rules for post-trial Article 39(a), UCMJ, 10 U.S.C. § 839(a), sessions; and/or

> (3) Correct or modify the entry of judgment.

*Id.* at *6–7.

On 9 November 2021, Appellant received a copy of the court's opinion remanding his case. On 19 November 2021, the Military Justice Law and Policy Division (JAJM) informed the Air Force Trial Judiciary via memorandum of this court's remand to the Chief Trial Judge. The JAJM memorandum included: "**Suspense**: 19 December 2021." Also on 19 November 2021, the Chief

11

Trial Judge, Air Force Trial Judiciary, found the original detailed military judge was not reasonably available and detailed a new military judge for post-trial corrective actions.

On 10 December 2021, the newly detailed military judge sent an email to trial counsel and trial defense counsel informing them he was the detailed military judge for additional post-trial processing of Appellant's case on remand. The military judge then returned the case to the convening authority by directing she complete a new Decision on Action memorandum which was to "directly state whether the convening authority approves or disapproves the adjudged punitive discharge and reduction in grade."[7] In this same email, the military judge also directed the base legal office to submit to him as soon as possible ("ASAP"), "but no later than [close of business] Thursday, 16 December 2021," a "proposed corrected [entry of judgment] (with the [n]ew [c]onvening [a]uthority Decision on Action memorandum as an attachment) cc'ing all parties."

On 15 December 2021, the convening authority took action on the sentence by reducing the term of confinement pursuant to the PTA and approving the remainder of the sentence. On 16 December 2021, Appellant's trial defense counsel submitted a supplement to his initial submission of matters directly to the convening authority via email. Appellant's supplemental matters focused on claims that his parole processing was mishandled while he was confined and, as a result, he requested the convening authority "commute the reduction in rank." The substance of Appellant's supplemental matters was not raised in his initial submission of matters.

On 17 December 2021, the military judge emailed government counsel stating he reviewed the draft entry of judgment and "they are in proper form contingent upon resolution of when and whether the convening authority reviewed the [d]efense clemency submission on 16 December 2021."

In his email, the military judge noted Appellant's supplemental matters were "something the [c]onvening [a]uthority had an obligation to review [if] . . . timely submitted." The military judge then referred to R.C.M. 1106(d)(1) and stated an accused "has 10 days to submit clemency matters from the announcement of sentence." The military judge opined, "For the purpose of post-trial processing, my read is that the 10-day period would start to run on the day [Appellant] was delivered a copy" of this court's opinion. He concluded that if Appellant was provided a copy of our opinion "anytime on or before 5 December 2021, then [Appellant's] submission would not be 'timely' within the meaning of [R.C.M. 1106(d)(1)] (absent a request for extension)." Trial defense counsel

---

[7] The convening authority was a successor to the convening authority who signed the original Decision on Action memorandum.

subsequently confirmed Appellant received a copy of the opinion prior to 5 December 2021. The military judge asked government counsel via email if the convening authority had reviewed Appellant's supplemental matters and if the convening authority had not reviewed the supplemental matters, did she "nonetheless want to review it" in the event the Air Force Court of Criminal Appeals were to determine the supplemental matters were timely. Government counsel responded the convening authority had not reviewed the supplemental matters and she "declined to consider matters received after she took action on 15 December 2021."

On 23 December 2021, the military judge entered judgment. The military judge attached to the entry of judgment Appellant's supplemental matters, and the email correspondence between the military judge and government counsel regarding the supplemental matters. The military judge also included as part of the entry of judgment the following:

> The Air Force Court of Criminal Appeals remanded this case for additional post-trial processing in an opinion dated 8 November 2021. The Accused received a copy of that opinion on or about 9 November 2021. Assuming arguendo that the Accused had a renewed opportunity to submit clemency matters on the "remand" phase of this post-trial processing, that (relating strictly to those aspects of the sentence that the Court held the Convening Authority had not "acted upon") that period was 10 days only, and for purposes of post-trial processing, commenced upon the Accused's receipt of the appellate opinion ordering the additional post-trial processing. *See* RCM 1105(c)(c) (MCM 2016): RCM 1106(b)(l) (MCM 2019). Thereafter, on 15 December 2021, the Convening Authority completed a new Convening Authority Decision on Action memorandum. The Accused submitted a clemency request on 16 December 2021. The Accused did not submit a request for an "extension" of time to file a clemency request. See RCM 1105(c) (MCM 2016); RCM 1106(b)(4) (MCM 2019). The Convening Authority declined to review the untimely clemency submission submitted by the Accused on 16 December 2021 (submitted more than 10 days after the Accused received a copy of the opinion of the Air Force Court of Criminal Appeals remanding his case for additional post-trial processing). In accordance with RCM 1105(c)(1) (MCM (2016) and RCM 1106 (d)(l)(MCM 2019), the Convening Authority is not obligated to review "untimely" clemency submissions. The Accused did not raise a motion under R.C.M. 1104(b)(2)(B) (2019 MCM) to challenge the form or legality of the convening authority's "new" decision on action memorandum.

13

(Emphasis omitted).[8]

## 2. Law

"The proper completion of post-trial processing is a question of law [we] review[ ] de novo." *United States v. Zegarrundo*, 77 M.J. 612, 614 (A.F. Ct. Crim. App. 2018) (citing *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)).

After a sentence is announced, an accused is entitled to submit "to the convening authority any matters that may reasonably tend to inform the convening authority's exercise of discretion under R.C.M. 1109 or 1110." R.C.M. 1106(b). To be timely, matters must be submitted "within ten days after the sentence is announced." R.C.M. 1106(d)(1). "[T]he convening authority may, for good cause, extend the period for not more than 20 days." R.C.M. 1106(d)(4). Submission of any matters "shall be deemed a waiver of the right to submit additional matters unless the right to submit additional matters within the prescribed time limits is expressly reserved in writing." R.C.M. 1106(e)(2). "The convening authority shall take action on the sentence and, in the discretion of the convening authority, the findings. . . ." R.C.M. 1107(a) (2016 *MCM*). "The convening authority may take action only after the applicable time periods . . . have expired or the accused has waived the right to present matters . . . whichever is earlier, subject to regulations of the Secretary concerned." R.C.M. 1107(b)(2) (2016 *MCM*).

> When a case is remanded for a new convening authority's action, the convening authority is not limited to considering the circumstances as they existed at the time of the initial review. The convening authority may consider other appropriate matters -- including changes in circumstances following the initial action on the case -- for purposes of determining whether clemency or other post-trial action is warranted.

*Rosenthal*, 62 M.J. at 262–63 (citations omitted).

"Because clemency is a highly discretionary Executive function, there is material prejudice to the substantial rights of an appellant if there is an error and the appellant 'makes some colorable showing of possible prejudice.'" *Id.* at 263 (quoting *United States v. Wheelus*, 49 M.J. 283, 289 (C.A.A.F. 1998)) (additional citation omitted).

## 3. Analysis

As an initial matter, we considered whether Appellant was entitled to submit matters in accordance with R.C.M. 1106 after our remand. Under the facts of this case, we conclude in the affirmative: Appellant was entitled to submit

---

[8] This excerpt is taken verbatim from the record of trial.

matters after our remand and before the successor convening authority took action on the remaining portions of his sentence.

Our prior decision of 8 November 2021 remanded the case to the Chief Trial Judge because the convening authority failed to take action on the entire sentence. *King*, unpub. op. at *5–7. As the convening authority originally erred by not acting on all portions of the sentence,[9] the successor convening authority was required to take action, which necessarily involved a decision to "approve, disapprove, commute, or suspend the sentence of a court-martial in whole or in part" with regard to the adjudged reduction in grade.[10] 10 U.S.C. § 860(c)(2)(B) (2016 *MCM*). On 10 December 2021, via email communication, the newly detailed military judge directed the convening authority to complete additional post-trial processing. Specifically, the military judge directed a "[n]ew Convening Authority Decision on Action memorandum" which was to "directly state whether the convening authority approves or disapproves the adjudged punitive discharge and reduction in grade." The military judge's remand to the successor convening authority directed a "new" decision on action, as opposed to a corrected action merely reflecting a prior decision by the convening authority. Further, the military judge's email, which was addressed to all parties, stated, "ASAP, but no later than COB Thursday, 16 December 2022 the base legal office will submit a proposed [entry of judgment] (with the New Convening Authority Decision on Action memorandum as an attachment) cc'ing all parties."

We did not limit the successor convening authority to considering the circumstances as they existed at the time of the initial review; rather she was to take a fresh look at the case and then take action. Because the successor convening authority had authority to take favorable action on the adjudged reduction in grade, and given the wording of our remand and the military judge's interpretation thereof, Appellant was entitled to submit supplemental matters. *See Rosenthal*, 62 M.J. at 262–63.[11]

---

[9] Appellant's original sentence was entered by the previous military judge on 29 May 2020.

[10] The convening authority did not have the same authority with regard to the punitive discharge. *See* Article 60(c)(4), UCMJ, 10 U.S.C. § 860(c)(4) (2016 *MCM*).

[11] We acknowledge that under similar circumstances as found in this case a separate panel of this court concluded that a convening authority was not obligated to give an appellant an opportunity to submit supplemental matters after the case was remanded for a *Brubaker-Escobar* error. *United States v. White*, No. ACM 39917 (f rev), 2022 CCA LEXIS 344, at *45 (A.F. Ct. Crim. App. 10 Jun. 2022) (unpub. op.); *see also United States v. Brubaker-Escobar*, 81 M.J. 471, 475 (C.A.A.F. 2021) (where a convening

Next, we consider whether Appellant's submission of matters was timely. The military judge concluded Appellant's matters were untimely, and the convening authority was not required to consider them. The military judge focused on the requirement that matters must be submitted "within ten days after the sentence is announced." R.C.M. 1106(d)(1). He reasoned Appellant was entitled ten days to submit matters due to our remand, but that the ten days began when Appellant was notified of our decision and, as such, Appellant's submission of matters on 16 December 2021 was untimely. We disagree.

The Rules for Courts-Martial do not specify timeliness for cases which have been remanded to a convening authority to take action. We, like the military judge, find it reasonable to afford the Appellant ten days to submit matters. However, we find the matters must be submitted within ten days after Appellant was notified the case had been remanded to the convening authority. Convening authority obligations, including receiving matters from Appellant, were not ripe until the case was remanded. As Appellant's case was not remanded to the convening authority until 10 December 2021, Appellant's submission of matters to the convening authority on 16 December 2021 was timely, and consequently it was error by the convening authority not to consider them prior to taking action.[12]

We find the convening authority's failure to consider Appellant's supplemental matters in which he requested the convening authority "commute his adjudged reduction in rank" resulted in a material prejudice to the substantial rights of Appellant. Appellant has made a colorable showing of possible prejudice, as the convening authority was empowered to grant the requested relief—commutation of the adjudged reduction in rank—and took action without considering matters submitted by Appellant. To remedy this error, Appellant requests we remand his case for "proper post-trial processing." We decline to do so. Rather than remanding this case yet again, we exercise our Article 66(d),

---

authority's error was not jurisdictional, but procedural, and pursuant to Article 59(a), UCMJ, 10 U.S.C. § 859(a), procedural errors are "test[ed] for material prejudice to a substantial right to determine whether relief is warranted" (alteration in original) (citation omitted)). That panel concluded that although the convening authority considered supplemental matters "the plain language of R.C.M. 1106(d)(4) prohibits the convening authority from granting an extension for the submission of clemency matters by more than 20 days, but we see nothing in the rule prohibiting a convening authority from considering matters received outside of that timeframe." *White* at *44, n.17. The decision in *White* focused only on the plain language of R.C.M. 1106, and *Rosenthal* was not addressed in the analysis.

[12] We note it would have been prudent, as brought up by the military judge, for the convening authority to review the supplemental matters in the event they were later found to be timely.

UCMJ, authority and grant the relief Appellant requested in his supplemental clemency submission by not affirming the portion of the sentence that adjudged a reduction to the grade of E-1.

## E. Timeliness of Appellate Review

Additionally, we consider whether Appellant is entitled to relief for a facially unreasonable appellate delay. *United States v. Moreno*, 63 M.J. 134, 135 (C.A.A.F. 2006) (citations omitted); *Tardif*, 57 M.J. at 223–24. We decline to grant such relief.

### 1. Law

We review de novo whether an appellant has been denied the due process right to speedy appellate review. *Moreno*, 63 M.J. at 135 (citations omitted). A presumption of unreasonable delay arises when appellate review is not completed and a decision rendered within 18 months of a case being docketed. *Id.* at 142. A presumptively unreasonable delay triggers an analysis of the four factors specified in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Id.* at 135 (citations omitted). A presumptively unreasonable delay satisfies the first factor, but the Government "can rebut the presumption by showing the delay was not unreasonable." *Id.* at 142. Assessing the fourth factor of prejudice, we consider the interests of "prevention of oppressive incarceration;" "minimization of anxiety and concern of those convicted;" and "limitation of the possibility that . . . grounds for appeal, and . . . defenses . . . might be impaired." *Id.* at 138–39 (citations omitted). In the absence of prejudice as identified in *Moreno*, a due process violation exists only when "the delay is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey,* 63 M.J. 353, 362 (C.A.A.F. 2006).

Furthermore, we as a service Court of Criminal Appeals are required by Article 66(d), UCMJ, to determine which findings of guilty and the sentence or part thereof "should be approved." 10 U.S.C. § 866(d); *see also Tardif*, 57 M.J. at 224. In *Tardif*, the CAAF recognized "a Court of Criminal Appeals has authority under Article 66[ ][, UCMJ,] to grant relief for excessive post-trial delay without a showing of 'actual prejudice' within the meaning of Article 59(a)." 57 M.J. at 224 (citation omitted). The essential inquiry under *Tardif* is whether, given the post-trial delay, the sentence "remains appropriate[ ] in light of all circumstances." *Toohey*, 63 M.J. at 362 (citing *United States v. Bodkins*, 60 M.J. 322, 324 (C.A.A.F. 2004) (per curiam)).

### 2. Analysis

Appellant's case was docketed with the court on 12 January 2022. The delay in rendering this decision after 12 July 2023 is presumptively unreasonable. The reasons for the delay include the time required for Appellant to file his brief, the Government to file its answer, and Appellant to file his reply. Appellant has completed his 12-month term of confinement. Appellant has not asserted his right to timely appellate review and has made no specific claim of prejudice, and we find none. Because we find no particularized prejudice, and the delay is not so egregious as to adversely affect the public's perception of the fairness and integrity of the military justice system, there is no due process violation. *See Toohey*, 63 M.J. at 362.

As addressed above, we are granting relief by not affirming the reduction in grade rather than remanding this case to the convening authority. We conclude there is no basis for additional relief under Article 66(d)(2), UCMJ, or *Tardif* in the absence of a due process violation. *See Tardif*, 57 M.J. at 223–24; *Gay*, 74 M.J. at 744. Considering all the facts and circumstances of Appellant's case, we decline to exercise our Article 66(d), UCMJ, authority to grant additional relief for the delay in completing appellate review.

### III. CONCLUSION

We affirm only so much of the sentence that includes a bad-conduct discharge and confinement for 12 months. The findings as entered and the sentence, as modified, are correct in law and fact, and no other error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence, as modified, are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court